47 So.2d 743 (1950)
TAMIAMI TRAIL TOURS, Inc.,
v.
WOOTEN.
Supreme Court of Florida, Special Division A.
July 28, 1950.
Rehearing Denied September 11, 1950.
*744 A. Pickens Coles, Macfarlane, Ferguson, Allison & Kelly and T. Paine Kelly, Jr., all of Tampa, for appellant.
Dewey A. Dye and Dewey A. Dye, Jr., Bradenton, for appellee.
THOMAS, Justice.
The appellee recovered for injuries received when the bus of the appellant in which she was traveling from Bradenton to Tallahassee overturned near Chiefland. Although the place of the mishap was in Levy County, the suit was instituted and prosecuted to final judgment in Manatee County, where the carriage of the passenger commenced.
When the declaration had been filed, the defendant first addressed a demurrer to the pleading, moved to strike parts of it, and asked for a better bill of particulars. After argument, the demurrer was overruled, the motion was partly granted and partly denied, and the bill of particulars was ordered filed. The court thereupon fixed a time within which the defendant should plead. The defendant then filed a plea of privilege, and a few days later a plea of not guilty, both within the time allowed by the court. The substance of the plea of privilege was that the defendant maintained an office in Tampa, Florida, for the transaction of customary business, but had none in Manatee County, and that it should be sued either in the county where it kept this office or in the county where the cause of action originated.
The court, in sustaining a demurrer to the plea, placed his ruling squarely on the ground that the defendant had waived the privilege of being sued elsewhere than Manatee County by first filing the demurrer, arguing it, and waiting until it had been overruled.
We must first determine whether there was error in this ruling. We think there was none and that we need give no other authority for the conclusion than Payne, Director General of Railroads, v. Ivey, 83 Fla. 436, 93 So. 143, 145, where it was unequivocally held that the defendant, "having demurred generally to the declaration, and the demurrer having been overruled, before the plea in abatement to the venue was filed, the right of the defendant to plead his privilege as to the venue was waived, and the demurrer to the plea in abatement was properly sustained."
Before discussing the authorities which the appellant claims neutralize this pronouncement of the law it is well to give some of the history of the cited case which we have learned from the original file. The suit was instituted against Florida East Coast Railway Company, a corporation. The same day the declaration was filed the defendant presented to the court a petition setting out that the transportation system was at the time the alleged cause of action accrued in the "exclusive possession, use, control and operation of the President of the United States" under an act of Congress, and asked that the Court substitute as defendant in the case "John Barton Payne, Director General of Railroads, as Agent of the President of the United States * * *." It was this substituted defendant who demurred and subsequently pleaded in abatement.
The appellant insists that this decision was rendered ineffective by the comment of this court in the case of State ex rel. Bernhart v. Barrs, 152 Fla. 631, 12 So.2d 576, 577, by the language: "Dicta in Payne v. Ivey, supra, leaves the impression that a non resident may claim the privilege to be sued in the county where the cause of action accrued but in that case the non resident had a property interest in that county and had a basis for his contention." It seems to us that when the sentence is read carefully, the latter clause refutes the idea that the whole statement was obiter dictum, and that appellant, in insisting that this case condemned the ruling in Payne v. Ivey, supra, places too much emphasis on the word "dicta" taken out of context. Not only that, but at the time this case was tried and at the present time there was and is in effect Section 46.04, Florida Statutes 1941, *745 and F.S.A., providing that "suits against domestic corporations shall be commenced only in the county * * * where such corporation shall have or usually keep an office for the transaction of its customary business, or where the cause of action accrued, or where the property in litigation is located * * *." There is not present of course in this section the exception appearing in Section 46.01, of the same substance and applying to individuals, that "this section shall not apply to suits against non-residents."
It is obvious to us that the pronouncement in Payne v. Ivey, supra, was not made relative to a point outside the issues presented to this court because John Barton Payne, Director General of Railroads, was at that time in no sense acting in an individual capacity but actually, by authority of law and at the instance of the corporate defendant, was designated by the court to act in lieu of that defendant in that litigation, and such being the case, a privilege available to the corporate defendant certainly was available to him. So we think the decision there was properly rendered and that it is, and should be for reasons which we shall eventually give, a proper construction of controlling law.
Appellant also draws our attention to Rule 17, in force at the time of the decision in the Payne case, providing that inasmuch as there is no distinction between pleas in abatement and other dilatory pleas, they should be filed within the same time as other pleas are required to be filed. We see no inconsistency between the ruling in the cited case and the requirements of the rule. It is not primarily a question of whether the pleas were filed within the period fixed for presenting all pleadings, but a matter of the order in which they should be filed. So in this case all pleas were timely presented, but it does not follow that the plea of privilege, having been filed within the time, was not waived by a demurrer filed beforehand.
Appellant relies, too, upon Section 52.10, Florida Statutes 1941, and F.S.A., providing that "pleas to the jurisdiction or in abatement may be pleaded in any action with pleas in bar or to the merits * * *." (Emphasis supplied.) Here again we find no conflict. The defendant could have filed its dilatory plea simultaneously with the demurrer, and indeed this would probably have been a sensible procedure, but permission to file the two together cannot be interpreted to mean that the demurrer may be filed before the other without having the effect of waiver.
We have been referred to our decision in E.O. Painter Fertilizer Co. v. Du Pont, 54 Fla. 288, 45 So. 507, 509, but here also the court held that the privilege would not be waived by the presentation of pleas to the merits where both were filed together, or, as the court stated it, "* * * the presentation of the pleas to the merits or in bar along with a plea, not denying the jurisdiction of the court over the person or the defendant, but in abatement to the venue * * * does not impliedly waive the plea in abatement * * *." (Emphasis supplied.)
Of like tenor was the ruling in Southern Brewing Co. v. May, 122 Fla. 443, 165 So. 627, 628, where the court stated that in L.B. McLeod Const. Co. v. State, 106 Fla. 805, 143 So. 594, it had been held that a plea of privilege could be filed "before or with pleadings going to the merits * * *." (Emphasis supplied.)
We are unable to comprehend how the appellant gets much comfort from the opinion in State ex rel. Teague v. Harrison, 138 Fla. 874, 190 So. 483, which he understands to have repudiated the ruling in Payne v. Ivey, supra, and to have expressly held that a plea of abatement filed after demurrer was timely presented. We do not so construe that decision. The majority of the court decided that the matter presented was one of jurisdiction and not of privilege, and of course the jurisdiction of a court may be questioned at any time. So the precise point involved here was not brought into focus. It is true that the opinion set out that one point involved was whether the plea of privilege had been waived by the demurrer, but it was not necessary to decide that issue in view of the entry of a challenge to the jurisdiction of the court in whatever form presented.
*746 So we now decide that the plea of privilege could have been filed before or with the demurrer, but having been filed afterward, the privilege was abandoned.
Before leaving this question we should like to point out the practicality of such a ruling. When a defendant takes the position that a suit should be brought in another county, the matter should be decided as early as possible so that the cause may be instituted in the proper place and may proceed there for all purposes; so the court eventually to try the issues may have the opportunity of determining in the first instance whether the plaintiff has, as a matter of law, stated a cause of action. If the plea of privilege and the demurrer are filed simultaneously, the court may determine first the sufficiency of the plea, ignoring the demurrer if the plea is held to be good. Such procedure reduces to a minimum the time of bringing the controversy to an issue and the issue to a trial.
As we have said, the defendant pleaded not guilty. After the jury was empaneled and before any testimony was introduced, this plea was withdrawn, the defendant reserving the right to examine and cross-examine witnesses on the subject of damages. When this was done no request was made for a ruling governing the future course of the evidence and none was announced, but as the trial progressed the appellant repeatedly objected to evidence relating only to the negligence, which was, in effect, admitted by the abandonment of the plea.
The appellant now asks whether in this situation the court erred in permitting the appellee to establish the circumstances surrounding the actual wreck instead of restricting her to an account of the injury she suffered.
We approved a contrary procedure in our opinion in Barton v. Miami Transit Company, Fla., 42 So.2d 849, filed December 23, 1949, after the instant case was tried, pointing out that in the interests of clarity, simplification, and expedition, evidence in a case like this could properly be confined to damage, once the liability had been admitted. Although we sanctioned this method of trial in that case and now again commend it, we cannot say that failure to pursue the course in the immediate controversy resulted in error that was harmful.
The next question propounded by the appellant constitutes a challenge to the manner of dealing with appellant's requested charge anent future earnings. It consisted of two parts  one cautioning the jury that damages for loss of future earnings could be allowed only where shown "with reasonable certainty." This portion was given, but the judge deleted the second portion, a statement of fact that no such loss had been suffered and none could be "taken into account." Aside from the propriety of charging on a question of fact, this ruling was correct, as will appear from the account we shall now give of the effect upon appellee's future of the injury she underwent because of appellant's negligence.
The jury returned a verdict of $25,000.
At the time she was hurt appellee was twenty years old and was a student at Florida State University where she was studying speech correction and dramatic art. The injuries to her collar bone and arm were so severe that she was confined to the hospital for eleven weeks, and eventually her graduation was retarded nearly a "school year." The disability of her right shoulder was estimated at five per cent and of her left arm twenty-three per cent. This injury to the shoulder is augmented from a "cosmetic standpoint" because of an unsightly post-operative scar "the width of one's finger." Also she has a permanent droop of the right shoulder. The extension of the left arm is limited to about 130 degrees, 50 degrees less than normal. Besides these impairments, the nerves in the small and ring fingers of her left hand are damaged; the grip in both hands is weakened; her performance of ordinary household duties is greatly curtailed.
Because her stage presence would be affected by the scar and the droop of her shoulder, appellee forsook any plan to pursue dramatic art.
Appellee's outlay for medical and other expenses amounted to about $1,800, *747 and to this may be added a loss of $2,200 she would have earned as a teacher had her graduation not been postponed. Appellant, assuming these "special damages" to have been proved, centers his attack on the remaining $21,000 of the verdict. If there is deducted from this whatever amount the jury had in mind for pain and suffering, always speculative and conjectural, was the remainder such grossly excessive compensation, for one who is to be handicapped physically the remainder of her life and to bear disfigurement too, that we should override the trial judge's decision and reduce the amount, or remand the case for trial of the damage? We think not.
The remaining question involves amounts paid two physicians for their expert testimony.
By Chapter 25090, Laws of Florida, Acts of 1949, F.S.A. § 90.231, an expert witness is allowed such fee, not to exceed $10 per hour, as the trial judge considers reasonable "from time of reporting to place of the trial until conclusion of his testimony * * *." One of the doctors "reported by telephone at 9:00 A.M.," to quote from the judge's order taxing costs, "that he would be available to give his testimony when called." "* * * even though," to quote further, "he did not arrive at the courthouse for the purpose of giving his testimony until 3:00 P.M." and concluded his testimony an hour later, he was compensated for seven hours. This was error. We quite agree that it is a great convenience to the court to have an expert witness stand by in such manner, but it is also an accommodation to the witness. The doctor should not be paid for six hours while presumably ministering to his patients and taking care of his own affairs. The generous fee allowed is to compensate him for the hours he loses by reason of being away from his office while in attendance upon the court. He cannot be remunerated by the court at the rate of ten dollars an hour simply for holding himself in readiness to respond to a telephone call.
Appellant complains because the other physician was paid, under Section 90.23, Florida Statutes 1941, and F.S.A., $20 instead of $15 for testifying an hour and twenty-five minutes. We think this statute should be construed with Chapter 25090, supra, but we do not find that the judge did violence either to his discretion or the statute by not computing the pay of the expert witness on the basis of fractional hours.
With the exception of reducing the compensation of the one expert witness by $60, the judgment is affirmed.
Affirmed with directions.
ADAMS, C.J., and TERRELL and CHAPMAN, JJ., concur.