441 So.2d 1129 (1983)
Gregorio RODRIGUEZ, Appellant,
v.
The STATE of Florida, Appellee.
No. 82-262.
District Court of Appeal of Florida, Third District.
January 25, 1983.
On Rehearing November 22, 1983.
*1130 Kalter & Kutner and Robert Kalter, Miami, for appellant.
Jim Smith, Atty. Gen. and Paul Mendelson and Penny Hershoff Brill, Asst. Attys. Gen., for appellee.
Before HENDRY, BASKIN and FERGUSON, JJ.
On Rehearing En Banc November 22, 1983.
FERGUSON, Judge.
The single question presented for review is whether a sentence imposed after a seven-week period of probation, which probation was agreed to by the defendant as an alternative to bail or incarceration while awaiting a presentence investigation, violates the double jeopardy clause of the United States Constitution.
After many hours of investigative work, law enforcement officers identified appellant as part of a check forgery ring which had defrauded local businesses of hundreds of thousands of dollars. Rodriguez admitted to having cashed approximately $170,000 worth of forged checks using stolen drivers' licenses, then entered a plea of guilty to twenty-three informations containing some seventy-five felony counts, including one count of first-degree grand theft. The condition of the plea offer was a "cap" (maximum) of ten years incarceration with the final sentence to be decided after the court had reviewed a presentence investigation report. At the plea hearing, the state voiced concern that the defendant would flee the jurisdiction if permitted to remain at liberty under a $20,000 bond while awaiting sentencing. An agreement was reached whereby appellant would remain at liberty on a short term of probation pending preparation and submission of the presentence report. Pertinent parts of the colloquy follow:
THE COURT: I can do one of two things: I can take the plea as contemplated and put him on probation with a special condition that he do a PSI, or I can see that he remains in jail, or I can increase the bond.
[DEFENSE COUNSEL]: Why would you have to do any of those?
THE COURT: Insurance to the State that he will be here. I agree with the State that at this time his chances are greater now that there is an agreed termination.
* * * * * *

*1131 THE COURT: I will take the plea and as part of the negotiations will be that he be placed on probation pending the presentence investigation and any failure to appear at the time of the presentence investigation will be a violation of his probation and he could get the maximum.
[DEFENSE COUNSEL]: Let me explain that to him, Judge.
THE COURT: I will explain it to him. It is contemplated now that if you enter a plea of guilty to these charges that the court will order a presentence investigation. Depending on the outcome of the presentence investigation, you could receive up to ten years in jail, from zero to ten years.
THE DEFENDANT: I understand.
THE COURT: The State Attorney is afraid that you are going to run, that you will not appear, and he asks the Court to take some assurance that you do appear.
The Court will do this: To assure that you will appear, the Court will accept the plea today and as part of the plea today will place you on a probation, and part of that probation is that you appear here on a particular day six weeks from now, whatever the date is, for imposition of sentence, which would be to ten years... .
THE DEFENDANT: I understand.
* * * * * *
[DEFENSE COUNSEL]: What do you want to do? Do you want to go on that probation?
THE DEFENDANT: Yes.
The court then entered an order, signed by the defendant, placing him on probation on all cases for a seven-week period with a special condition that defendant appear in court, after the Christmas holidays, for a disposition hearing. On January 13, 1982, appellant appeared before the court for sentencing as agreed. The court imposed a ten-year sentence to be followed by a ten-year period of probation. Appellant objected to the period of probation which was imposed to follow the ten-year sentence,[1] but never challenged the legality of the ten-year sentence or the probation which was granted as a condition of release pending sentencing.
[DEFENSE COUNSEL]: Judge, for the record, I think I have to place an objection on the ten years consecutive probation to the ten years state prison. The agreements we had in discussions were a total liability for ten years. Actually, he is ending up with and [sic] open-end liability. He is going to get ten years prison and still be liable, once again, ten years for all these cases. This is something that goes far beyond the discussions with the State and the Court.
Otherwise it had been agreed that there was no legal reason why the sentence should not be imposed. For the reason that the defendant agreed to and benefited from the probation granted as a substitute for bail or incarceration, he has waived the right to attack the sentence by this appeal. See Preston v. State, 411 So.2d 297 (Fla. 3d DCA 1982) (where youthful offender placed on probation, the terms of which he fully accepted, enjoyed, then violated, he waived the right to question the legality of the probation); King v. State, 373 So.2d 78 (Fla. 3d DCA 1979) (having accepted and enjoyed an unlawfully lenient probation in lieu of mandatory confinement, defendant waived the right to question the legality of the probation).
The case of Buckbee v. State, 378 So.2d 39 (Fla. 3d DCA 1979), though close on the facts, is distinguishable. In Buckbee, the condition upon which the court sought to revoke the defendant's probation was not a part of the formal probation order and, even if it had been, was the kind of condition which required a hearing and finding of violation before probation could be revoked. The probation graciously granted herein expressly contemplated that no violation *1132 of probation was required in order for the negotiated sentence to be imposed.
There is no lack of jurisdiction herein to impose the sentence. A sentence is not "imposed" until a sentencing hearing is concluded. Farber v. State, 409 So.2d 71, 73 (Fla. 3d DCA 1982). It was agreed by all concerned that there would be no sentencing until January 13, 1982, on which date the first and only "sentencing" occurred. But even if there otherwise might have been a jurisdictional bar, by the nature of the agreement appellant clearly waived any jurisdictional impediments. Cf. Tucker v. State, 417 So.2d 1006 (Fla. 3d DCA 1982) (although statute of limitations is said to be a jurisdictional bar to prosecution on lesser included offenses, a defendant can waive the bar if he thinks it does not work to his advantage); Oliver v. State, 379 So.2d 143 (Fla. 3d DCA 1980) (where defendant was charged with first-degree murder, a capital offense having no statute of limitations, and trial court thereafter accepted negotiated plea of nolo contendere to second-degree murder, defendant was estopped to subsequently assert applicability of statute of limitations for second-degree murder); Lerman v. Cornelius, 423 So.2d 437 (Fla. 5th DCA 1982) (Case No. 82-1214, opinion filed December 1, 1982) (double jeopardy no bar to reopening a case after sentencing where a condition of the plea had not been performed). See also Buckbee, 378 So.2d at 41 (Schwartz, J., dissenting).
On these facts we reject appellant's contention that by having appeared in court on January 13, 1982 he satisfied the special condition of probation and became, thereupon, entitled to be forever discharged. "The Constitution does not require that sentencing be a [technical] game in which a wrong move by a judge means immunity for the prisoner." Farber v. State, 409 So.2d at 72, citing Bozza v. United States, 330 U.S. 160, 166-167, 67 S.Ct. 645, 649, 91 L.Ed. 818, 822 (1947). The judicial act complained of herein was entirely consistent with what was intelligently agreed upon, manifestly in appellant's best interest.
Affirmed.[2]
BASKIN, Judge (dissenting).
Defendant Rodriguez pled guilty to pending forgery and first-degree grand theft charges. The plea negotiations provided that he receive no more than ten years' imprisonment following the court's review of a presentence investigation (PSI) report. During preparation of the PSI, the court released Rodriguez on probation for seven weeks. As a condition of the probation, Rodriguez was required to appear in court on a specified date for resentencing. He appeared as required, and the court sentenced him to serve ten years in prison followed by ten years on probation. According to Rodriguez, the first probation imposed by the trial court constituted his lawful sentence, and the court was precluded from imposing the prison sentence by constitutional prohibitions against double jeopardy. I agree with Rodriguez's contentions. In my opinion, the trial court's utilization of probation as an alternative to bail during the period between acceptance of the plea and the subsequent sentencing constituted error. Rodriguez's consent offers no basis for affirmance because the court lost jurisdiction to impose another sentence in the absence of a violation of probation. Furthermore, his consent was not the product of free choice. By approving the novel use of probation in lieu of bail, the majority departs from established principles of law and embarks upon an unauthorized foray into judicial legislation. The result is in direct contravention of existing law.
The question at issue is whether, instead of releasing a defendant on bail after accepting a plea, the court may place him on a period of probation during preparation of the PSI and, at a later time, impose another sentence even though he has completed the *1133 probation and no grounds exist for revocation. In my opinion, the procedure employed by the court is prohibited for several reasons. First, section 948.04(2), Florida Statutes (1981) states:
(2) Upon the termination of the period of probation, the probationer shall be released from probation and shall not be liable to sentence for a crime for which probation was allowed. (emphasis added).
Probation may not serve as an alternative for bail for other reasons. For example, a defendant who is found by the court to be suitable for probation may be placed on probation under the supervision and control of the probation and parole commission, Florida Rule of Criminal Procedure 3.790, only if the court finds that he "is not likely again to engage in a criminal course of conduct and that the ends of justice and the welfare of society do not require that the defendant shall presently suffer the penalty imposed by law... ." § 948.01(3), Fla. Stat. (1981). Until the PSI is completed and the court afforded an opportunity to review its findings, the court lacks sufficient information to conclude that probation is appropriate. Under these circumstances, the court should avail itself of applicable post-trial release procedures already in existence. Florida Rule of Criminal Procedure 3.550[1] and Florida Rule of Criminal Procedure 3.691[2] authorize bail.
Under Florida Rule of Criminal Procedure 3.790,[3] the court should have selected either probation or imprisonment. Rule 3.790 authorizes the court to impose sentence only upon revocation of probation.
Multiple sentences for the same offense are condemned by double jeopardy prohibitions. In Ex parte Lange, 85 U.S. (18 *1134 Wall.) 163, 21 L.Ed. 872 (1874), the United States Supreme Court addressed double jeopardy questions as they applied to sentencing. Edward Lange, found guilty of appropriating to his own use mail bags valued at less than $25, was sentenced to serve one year in prison and to pay a $200 fine, although the applicable statute permitted a sentence of either imprisonment or a fine. Lange paid the fine and sought a writ of habeas corpus. Upon discovering his error, the trial judge vacated the sentence and resentenced Lange to serve one year in prison. The Supreme Court granted the writ and overturned the prison sentence, not on grounds of mere technicality, but on the settled prohibition against repeated punishment for the same offense, stating:
If there is anything settled in the jurisprudence of England and America, it is that no man can be twice lawfully punished for the same offense. And though there have been nice questions in the application of this rule to cases in which the act charged was such as to come within the definition of more than one statutory offense, or to bring the party within the jurisdiction of more than one court, there has never been any doubt of its entire and complete protection of the party when a second punishment is proposed in the same court, on the same facts, for the same statutory offense.
85 U.S. (19 Wall.) at 168, 21 L.Ed. at 876.
Constitutional mandates against double jeopardy guarantee a defendant an expectation that his sentence will be final when commenced, subject to appeal. See United States v. DiFrancesco, 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980). Resentencing a defendant who has served his sentence is as prohibited as retrying a defendant who has already been convicted. Thus, in Lange, the Supreme Court of the United States ruled violative of double jeopardy the prison sentence imposed after payment of the fine, whereas, in Bozza v. United States, 330 U.S. 160, 67 S.Ct. 645, 91 L.Ed. 818 (1947), it approved the mandatory fine added to the original sentence Bozza had not begun to serve. Rodriguez's position is similar to Lange's. He had fulfilled the sentence of probation before the court imposed another sentence for the same offense.
Unlike Preston v. State, 411 So.2d 297 (Fla. 3d DCA 1982) and King v. State, 373 So.2d 78 (Fla. 3d DCA 1979), cited by the majority, in which each defendant's acceptance of an unlawful sentence was held to estop him from challenging its validity, Rodriguez received a lawful sentence of probation;[4] accordingly, no additional sentence could be added without violating the double jeopardy clauses of the United States and Florida Constitutions. See also Troupe v. Rowe, 283 So.2d 857 (Fla. 1973); Smith v. Brown, 135 Fla. 830, 185 So. 732 (1938); Scott v. State, 419 So.2d 1178 (Fla. 3d DCA 1982); Andrews v. State, 357 So.2d 489 (Fla. 1st DCA 1978); Katz v. State, 335 So.2d 608 (Fla. 2d DCA 1976); cf. Buckbee v. State, 378 So.2d 39 (Fla. 3d DCA), cert. denied, 388 So.2d 1118 (Fla. 1980) (trial court lacks jurisdiction to add condition requiring jail time to term of probation).
The improper use of probation may not be justified upon the theory that Rodriguez consented to the procedure. First, jurisdiction to impose a second sentence cannot be conferred by estoppel where no jurisdiction exists. Sweeting v. State, 390 So.2d 773 (Fla. 3d DCA 1980). Second, Rodriguez was hardly in a position to refuse the court's offer of release; the alternative of continuing bail was not approved. Under these circumstances, Rodriguez's choice could hardly be deemed a voluntary waiver of his right against double punishment, even if such a waiver existed.
For these reasons, I would hold that once Rodriguez received a legal sentence of probation, *1135 the court lost jurisdiction to resentence him unless a violation of that probation was properly charged and proved.
Before SCHWARTZ, C.J., and HENDRY, BARKDULL, HUBBART, NESBITT, BASKIN, DANIEL S. PEARSON, FERGUSON and JORGENSON, JJ.

EN BANC REHEARING
FERGUSON, Judge.
We adhere to the opinion of January 25, 1983 which holds that any double jeopardy claim appellant may have had was clearly waived. The opinion is, however, modified as follows.
The trial court had jurisdiction over the defendant and the subject matter for the purpose of revoking the probation and imposing a sentence. Jurisdiction of the subject matter is fixed by law and, in the ordinary sense, refers to the court's authority to take cognizance of and decide a case, or its power to hear and determine a cause. Tucker v. State, 417 So.2d 1006, 1009 (Fla. 3d DCA 1982); 15 Fla.Jur.2d Criminal Law § 559. Appellant concedes that when the case came on for the scheduled sentencing hearing on January 13, 1982, the court had authority over the subject matter for the purpose of doing a number of things, e.g., extending the probationary period if necessary in order to complete a presentence report, or terminating the probation. By that concession it follows that broad subject matter jurisdiction also exists, subject to statutory or judicially created limitations on the court's acceptance of jurisdiction, none of which are present here. See, e.g., Greene v. Greene, 432 So.2d 62, 66 n. 7 (Fla. 3d DCA 1983).
Appellant's argument is actually one of double jeopardy. Double jeopardy is often incorrectly described as a jurisdictional bar to an illegal sentence. See, e.g., Sweeting v. State, 390 So.2d 773 (Fla. 3d DCA 1980) (the court is without subject matter jurisdiction to vacate a sentence and impose probation even if accomplished within the sixty-day limit imposed by Florida Rule of Criminal Procedure 3.800(b) for reducing or modifying a sentence); Buckbee v. State, 378 So.2d 39 (Fla. 3d DCA 1979), cert. denied, 388 So.2d 1118 (Fla. 1980) (the court is without jurisdiction during a period of probation to modify the otherwise valid probation to add jail time); Scott v. State, 419 So.2d 1178 (Fla. 3d DCA 1982) (court had no jurisdiction to vacate and aggravate its previously imposed sentence on the basis of defendant's subsequent violation of the condition of his plea agreement). Subject matter jurisdiction and double jeopardy are two distinctly different concepts. Subject matter jurisdiction cannot be conferred by waiver or consent, Cancela v. State, 147 Fla. 500, 2 So.2d 859 (Fla. 1941); Sclafani v. County of Dade, 323 So.2d 675 (Fla. 3d DCA 1975), and may be raised at any time. Tamiami Trail Tours, Inc. v. Wooten, 47 So.2d 743 (Fla. 1950); Schmauss v. Snoll, 245 So.2d 112 (Fla. 3d DCA), cert. denied, 248 So.2d 172 (Fla. 1971). The defense of former jeopardy can be waived. Peel v. State, 150 So.2d 281 (Fla. 2d DCA 1963), appeal dismissed, 168 So.2d 147 (Fla. 1964), cert. denied, 380 U.S. 986, 85 S.Ct. 1359, 14 L.Ed.2d 279 (1965); Davis v. State, 392 So.2d 947 (Fla. 3d DCA 1980). A court's subject matter jurisdiction is unaffected by acts which may be illegal, i.e., the imposition of a sentence which violates the constitutional proscription against twice being placed in jeopardy, United States v. Benz, 282 U.S. 304, 51 S.Ct. 113, 75 L.Ed. 354 (1931), or the imposition of a sentence which exceeds that which is statutorily permissible, King v. State, 373 So.2d 78 (Fla. 3d DCA 1979), cert. denied, 383 So.2d 1197 (Fla. 1980). The rule is best stated in United States v. Benz, relied upon by both parties:
The distinction that the court during the same term may amend a sentence so as to mitigate the punishment, but not so as to increase it, is not based upon the ground that the court has lost control of the judgment in the latter case, but upon the ground that to increase the penalty is to subject the defendant to double punishment for the same offense in violation of *1136 the 5th Amendment to the Constitution... . Benz, 282 U.S. at 307, 51 S.Ct. at 114.[1]
Buckbee v. State is hereby overruled. We also recede from Scott v. State and Sweeting v. State insofar as they hold that the limits of a court's inherent power over the subject matter are defined by the extent to which its actions are lawful.
BASKIN, Judge (dissenting).
The majority opinion holds that even though a defendant has fully served his sentence, the trial court may recall him and impose an additional sentence for the same offense! When the trial court released Rodriguez on probation rather than on bail during preparation of the presentence investigation report, it committed error. When the trial court imposed a second sentence after Rodriguez had successfully completed his probation, the trial court acted in violation of existing law. In a plethora of cases the Supreme Court of the United States and other courts have consistently condemned as alien to our judicial system the imposition of multiple sentences for a single offense. Not one decision supports the majority's result. I am therefore compelled to dissent.

I

DOUBLE JEOPARDY

A

Estoppel and Waiver
The majority concludes that Rodriguez would have been entitled to assert the defense of double jeopardy had he not waived that defense by agreeing to probation during the preparation of the presentence investigation report. The majority's finding of waiver, or more properly estoppel, is predicated upon the majority's view that because he accepted the "benefit" of the trial court's grant of probation, Rodriguez may not attack his second sentence as violative of double jeopardy protections. The general rule, however, is that one may not be estopped by acceptance of that to which he is legally entitled. 28 Am.Jur.2d Estoppel & Waiver § 60 (1966).
The trial court announced that the purpose of the probation was to insure that Rodriguez would appear for "sentencing." Not only is there no legislative authority for such a use of probation, there is also no justification for the court's failure to utilize the approved form of release. The appropriate procedure for insuring an appearance at a judicial proceeding is the setting of bail. Fla.R.Crim.P. 3.691. Whether one convicted of a crime should be allowed bail following an adjudication is, with certain exceptions, a matter within the discretion of the trial judge. See Younghans v. State, 90 So.2d 308 (Fla. 1956). Where, as here, the trial judge exercises his discretion and determines that a defendant need not be incarcerated while awaiting sentencing, he may authorize release and insure a later appearance by setting bail. After he determines that incarceration is inappropriate, the trial judge has no other alternative than to set appropriate bail; the court lacks authority to fashion assurances not provided by law. Thus, because the court ruled he qualified for release, Rodriguez obtained no benefit when he "agreed" to probation; he received only that to which he was already entitled once the court determined that he need not be incarcerated. His "agreement" *1137 that he be released did not constitute an estoppel.
Waiver is the intentional or voluntary relinquishment of a known right, or conduct which warrants an inference of the relinquishment of a known right. Wilds v. Permenter, 228 So.2d 408, 410 (Fla. 4th DCA 1969). The choice confronting Rodriguez was to accept probation or return to jail. Because he was not released on bail, the only lawful alternative to jail, Rodriguez's choice of probation was coerced rather than voluntary and did not constitute a waiver. Furthermore, the transcript of the hearing discloses no voluntary relinquishment of a known right:
[PROSECUTOR]: I am going to [sic] that the bond be revoked today subsequent to the plea so that we will know he will be here.
THE COURT: What are the terms of the plea?
[PROSECUTOR]: The plea is a PSI with a cap of ten years.
[DEFENSE COUNSEL]: The prosecutor may have a feeling, but he has to have some kind of proof that the defendant plans to leave the jurisdiction.
I would request that that not take place. Prior to the plea, Mr. Rodriguez has appeared in court every single time that this matter has been up.
THE COURT: What is the bond?
[DEFENSE COUNSEL]: He says twenty thousand. He has never before failed to appear. There is absolutely no reason to revoke that bond, and why should we place him in jail prior to the termination of the sentence of the PSI.
.....
THE COURT: I can do one of two things: I can take the plea as contemplated and put him on probation with a special condition that he do a PSI, or I can see that he remains in jail, or I can increase the bond.
[DEFENSE COUNSEL]: Why would you have to do any of those?
THE COURT: Insurance to the State that he will be here. I agree with the State that at this time his chances are greater now that there is an agreed termination.
[DEFENSE COUNSEL]: He has never failed to appear for any proceeding. Ever since this entire matter came to the courts, Juvenile Court, he has always come in.
.....
[PROSECUTOR]: The Court has discretion to do whatever it pleases.
[DEFENSE COUNSEL]: Certainly there was a potential plea being entered by the defendant as far as incarceration prior to the negotiations. On the negotiated plea, he faces countless years in the State Prison with the 23-odd cases. Certainly if he had those facing him, he would have run long ago if he had planned to. I think he is in a much better posture.
THE COURT: I will take the plea and as part of the negotiations will be that he be placed on probation pending the presentence investigation and any failure to appear at the time of the presentence investigation will be a violation of his probation and he could get the maximum.
[DEFENSE COUNSEL]: Let me explain that to him, Judge.
THE COURT: I will explain it to him. It is contemplated now that if you enter a plea of guilty to these charges that the Court will order a presentence investigation. Depending upon the outcome of the presentence investigation, you could receive up to ten years in jail, from zero to ten years.
THE DEFENDANT: I understand.
THE COURT: The State Attorney is afraid that you are going to run, that you will not appear, and he asks the Court to take some assurance that you do appear.
The Court will do this: To assure that you will appear, the Court will accept the plea today and as part of the plea today *1138 will place you on a probation, and part of that probation is that you appear here on a particular day six weeks from now, whatever the date is, for imposition of sentence, which would be to ten years.
If you fail to appear on that date, you will have violated your probation and the Court could give you the maximum penalty on all of those cases. On each case, carries fifteen years, and I don't know how many that is going to end up with, but it is longer than your lifetime, sir.
THE DEFENDANT: I understand.
THE COURT: It does not make any difference where you go, anywhere in this country, anywhere in any foreign country, there is a process of this court in which you will be found and brought back here to face charges and trust me, the State is in a position to be able to do that.
I want you to know that you face that possibility, but that is up to you. Do you understand that, sir?
THE DEFENDANT: Yes.
[DEFENSE COUNSEL]: What do you want to do? Do you want to go on that probation?
THE DEFENDANT: Yes.
Nothing in the discussion reveals either an intentional relinquishment or conduct warranting an inference of relinquishment of a known right. The court imposed a sentence of probation without advising Rodriguez of any double jeopardy rights. I therefore find no impediment to the assertion of Rodriguez's double jeopardy defense.

B

Finality
Multiple punishments for a single offense were addressed in Ex parte Lange, 85 U.S. (18 Wall.) 163, 177, 21 L.Ed. 872, 878-79 (1874). The court stated:
We are of opinion that when the prisoner, as in this case, by reason of a valid judgment, had fully suffered one of the alternative punishments to which alone the law subjected him, the power of the court to punish further was gone; that the principle we have discussed then interposed its shield, and forbade that he should be punished again for that offense. The record of the court's proceedings, at the moment the second sentence was rendered, showed that in that very case and for that very offense the prisoner had fully performed, completed and endured one of the alternative punishments which the law prescribed for that offense, and had suffered five days' imprisonment on account of the other. It thus showed the court that its power to punish for that offense was at an end. Unless the whole doctrine of our system of jurisprudence, both of the Constitution and the common law, for the protection of personal rights in that regard, are a nullity, the authority of the court to punish the prisoner was gone. The power was exhausted; its further exercise was prohibited. It was error, but it was error because the power to render any further judgment did not exist. (emphasis added).
The continuing validity of Lange was approved as recently as 1980 in United States v. DiFrancesco, 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980) when the Supreme Court of the United States reiterated the "guarantee against multiple punishment that has evolved in the holdings of this Court... ." 449 U.S. at 140, 101 S.Ct. at 439.
A defendant has an interest in the finality of his sentence even though it is a lesser finality interest than he would have had following an acquittal. DiFrancesco. A comparison of Lange and Bozza v. United States, 330 U.S. 160, 67 S.Ct. 645, 91 L.Ed. 818 (1946) demonstrates the finality of a lawful sentence fully served. Lange had completed his punishment by paying a fine when the trial court attempted to resentence him. Because the statute provided that Lange's sentence could have been either a fine or imprisonment, the higher *1139 court ruled that he had completely served his sentence. Lange's interest in the finality of his sentence was very high  similar to a plea of autre fois acquit or autre fois convict. Thus, he could not be sentenced again. In Bozza, on the other hand, the defendant had not begun to serve his sentence when he was resentenced with the imposition of both a fine and imprisonment required under the statute. His resentencing was approved for two reasons. First, he had not begun to serve his sentence, cf. Andrews v. State, 357 So.2d 489 (Fla. 1st DCA 1978) (defendant taken across street to jail has begun serving sentence, resentencing improper), and second, the fact that his original sentence was illegal entitled him to a low interest in its finality. Rodriguez's finality interest in his original sentence is the same as Lange's and accordingly, double jeopardy prohibitions forbid resentencing. Because Rodriguez received a lawful sentence of probation and served it without ground for revocation, his sentence was final under Lange.
The majority reached an incorrect conclusion because it failed to note the factual and decisional distinctions in cases dealing with resentencings. These cases are of two types: the first group of cases pertains to increases in sentences; the second group of cases relates to multiple sentences. By applying cases which deal with the power to increase sentences rather than those which govern multiple sentences, the majority has premised its result upon faulty reasoning. Furthermore, it has overlooked the Supreme Court's affirmation that multiple sentences for a single offense are uniformly prohibited by the Constitution.

C

Separation of Powers
The power to define criminal offenses and to prescribe the punishments to be imposed upon those found guilty resides wholly in the legislature. Whalen v. United States, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980). Where, as here, the court exceeds its authority by imposing multiple punishments not authorized by the legislature, it not only violates double jeopardy but, by usurping a function relegated solely to the legislature, violates the doctrine of separation of powers. Although the federal separation of powers doctrine is not binding on the states, Dreyer v. Illinois, 187 U.S. 71, 23 S.Ct. 28, 47 L.Ed. 79 (1903), separation of powers is a fundamental part of the structure of Florida government. Art. II, § 3, Fla. Const. The judicial legislation countenanced by the majority is an overreaching of judicial authority and an incursion into that function of government constitutionally reserved to the legislature.

II

JURISDICTION
Turning next to the question of jurisdiction, I again disagree with the majority's conclusion that the issue involved is only that of double jeopardy. Courts retain jurisdiction to reduce or to mitigate a sentence for a limited period of time, State v. Sotto, 348 So.2d 1222 (Fla. 3d DCA 1977), cert. denied, 359 So.2d 1219 (Fla. 1978); State v. Evans, 225 So.2d 548 (Fla. 3d DCA), cert. denied, 229 So.2d 261 (Fla. 1969), cert. denied, 397 U.S. 1053, 90 S.Ct. 1393, 25 L.Ed.2d 668 (1970); Fla.R.Crim.P. 3.800, and only for limited functions. These functions are delineated in Florida Rule of Criminal Procedure 3.800(b), which provides:
(b) A court may reduce or modify to include any of the provisions of chapter 948, Florida Statutes, a legal sentence imposed by it within sixty days after such imposition, or within sixty days after receipt by the court of a mandate issued by the appellate court upon affirmance of the judgment and/or sentence upon an original appeal, or within sixty days after receipt by the court of a certified copy of an order of the appellate court dismissing an original appeal from the judgment and/or sentence, or, if further appellate review is sought in a higher court or in *1140 successively higher courts, then within sixty days after the highest state or federal court to which a timely appeal has been taken under authority of law, or in which a petition for certiorari has been timely filed under authority of law, has entered an order of affirmance or an order dismissing the appeal and/or denying certiorari.
Rule 3.800 authorizes the court to do only three things: (1) to reduce a legal sentence; (2) to modify within sixty days to include provisions of chapter 948; or (3) to modify a sentence within sixty days of receipt of an appellate court mandate. None of these functions applied to Rodriguez. Thus, the court retained no jurisdiction to impose an additional sentence.
It is well settled in this state that a court which imposes a lawful sentence loses jurisdiction over such sentence (except to enforce it) upon the expiration of the term of court in which the sentence was imposed, unless some constitutional or statutory provision extends the trial court's control of its sentence for specific periods and purposes. Tanner v. Wiggins, 54 Fla. 203, 45 So. 459, 14 Ann.Cas. 718 (1907); Tucker v. State, 100 Fla. 1440, 131 So. 327 (1930); Preston v. State, 117 Fla. 618, 158 So. 135 (1934); Smith v. Brown, 135 Fla. 830, 185 So. 732 (1938); State v. Schaag, Fla.App. 1959, 115 So.2d 783.
Evans, 225 So.2d at 549-50. See also Cherry v. State, 439 So.2d 998 (Fla. 4th DCA 1983).
The statutory authority of the court is further limited by section 948.04, Florida Statutes (1981), which provides that upon termination of the period of probation, the court is required to release the probationer without subjecting him to sentence for the crime for which he received probation. Revocation of probation is a circumstance statutorily authorizing the trial court to reconsider a sentence. Only after probation is revoked may pronouncement and imposition of a second sentence be visited upon a probationer. Villery v. Florida Parole & Probation Commission, 396 So.2d 1107, 1110 (Fla. 1981), and "probation may be revoked only for [a] violation of a condition set by the court." Barber v. State, 344 So.2d 913 (Fla. 3d DCA 1977). If no grounds for revocation exist, the court lacks jurisdiction to impose a second sentence. Upon termination of the probation, the probationer must be released and "shall not be liable to sentence for the crime for which probation was allowed." § 948.04, Fla. Stat. (1981). No basis for finding a violation of Rodriguez's probation appears.
Upon expiration of the probationary period, the court is divested of all jurisdiction over the probationer unless prior to that time the processes of the court have been set in motion for revocation or modification of probation. Gardner v. State, 412 So.2d 10 (Fla. 2d DCA 1981); see Carpenter v. State, 355 So.2d 492 (Fla. 3d DCA 1978). Rodriguez satisfied the terms of his probation when he met the condition set by the court, that is, to appear on a particular date. The court lost jurisdiction to resentence.

III

CONCLUSION
Lange and its progeny make clear that the court lacked jurisdiction to recall Rodriguez at the conclusion of the successful service of his sentence for the imposition of an additional sentence.[*] As to double jeopardy defenses, I find no evidence of waiver. Rodriguez was presented with only two choices, imprisonment or release upon a fixed period of probation. The court's failure to afford him the release upon bond to which he was entitled by law rendered his *1141 choice the product of coercion dissipating any inference of waiver. Peel v. State, 150 So.2d 281 (Fla. 2d DCA 1963), appeal dismissed, 168 So.2d 147 (Fla. 1964), cert. denied, 380 U.S. 986, 85 S.Ct. 1359, 14 L.Ed.2d 279 (1965) and Davis v. State, 392 So.2d 947 (Fla. 3d DCA 1980) are totally inapplicable to the issues in this case. They are concerned with waiver by the entry of a plea.
To arrive at its conclusion that a trial court may sentence repeatedly for a single offense, the majority was compelled to recede from three earlier cases decided by this court. It cannot, however, recede from the decisions of other Florida courts or of the Supreme Court of the United States, all of which guarantee that an individual who has fully served a sentence will not be forced to endure the imposition of additional punishment.
The majority has permitted the practice of release on probation rather than on bail to continue; I find cause for concern. It is a practice which totally disregards the mandates of statutes pertaining to the requirements for probation, ignores the statutory prohibition against sentencing following probation and disregards laws allowing bail. Furthermore, the majority ignores the fact that once an individual is released on probation he falls under the supervision of the probation and parole commission and is no longer before the court unless charged with a violation of his probation. One can only speculate as to the effect under today's decision of a violation of probation. Under the majority holding it seems likely that had Rodriguez been found guilty of another offense during the period of his release on probation, he would then have been subject to a third sentence for the original offense.
Probation is not a substitute for bail. The court lost jurisdiction after Rodriguez successfully served his term of probation. Reversal is required.
HUBBART, J., concurs.
NOTES
[1] The correctness of imposing a period of probation to follow the ten-year sentence is not challenged by this appeal.
[2] The dissent thinks the conviction should be reversed and appellant set free having served not a single day of the negotiated sentence. Although we conclude that reversal is not warranted on the facts of this case, we too express strong disapproval of the oft-used agreement whereby probation is substituted for bail; the practice is not authorized by statute or rule.
[1] Florida Rule of Criminal Procedure 3.550 states:

If a verdict of guilty is rendered the defendant shall, if in custody, be remanded; if he is at large on bail he may be taken into custody and committed to the proper official, or remain at liberty on the same or additional bail as the court may direct.
[2] Florida Rule of Criminal Procedure 3.691(a) provides:

(a) All persons who have been adjudicated guilty of the commission of any offense, not capital, may be released, pending review of the conviction, at the discretion of either the trial or appellate court, applying the principles enunciated in Younghans vs. State, 90 So.2d 308 (Fla. 1956), provided, that no person may be admitted to bail upon appeal from a conviction of a felony unless the defendant establishes that the appeal is taken in good faith, on grounds fairly debatable, and not frivolous; provided that in no case shall bail be granted if such person has previously been convicted of a felony, the commission of which occurred prior to the commission of the subsequent felony, and such person's civil rights have not been restored, or if other felony charges are pending against him and probable cause has been found that the person has committed the felony or felonies at the time the request for bail is made.
[3] Florida Rule of Criminal Procedure 3.790 states:

(a) Suspension of the Pronouncement and Imposition of Sentence; Probation. Pronouncement and imposition of sentence of imprisonment shall not be made upon a defendant who is to be placed on probation regardless of whether such defendant has or has not been adjudicated guilty. An order of the Court placing a person on probation shall place the probationer under the authority of the state probation and parole commission to be supervised as provided by law. The Court shall specify the length of time during which the defendant is to be supervised.
(b) Revocation of Probation; Judgment; Sentence. When a probationer is brought before a court charged with a violation of probation, the court shall advise him of such charge and if the charge is admitted to be true may forthwith enter an order revoking, modifying or continuing the probation. If such violation of probation is not admitted by the probationer, the court may commit him or release him with or without bail to await further hearing, or it may dismiss the charge of violation of probation. If the charge is not admitted by the probationer and if it is not dismissed, the court, as soon as may be practicable, shall give the probationer an opportunity to be fully heard in person, by counsel, or both. After such hearing, the court may enter an order revoking, modifying or continuing the probation. Following a revocation of probation, the trial court shall adjudicate the defendant, guilty of the crime forming the basis of his probation, if no such adjudication has been made previously. Pronouncement and imposition of sentence then shall be made upon such defendant (emphasis added).
[4] In this opinion, a legal sentence refers to one authorized by law. When appropriate prerequisites exist, probation is a legal sentence because it is authorized by statute. In Bozza, the trial court imposed a completely unauthorized sentence which raised separation of powers problems not germane to this appeal. Rodriguez's second sentence is illegal because the legislature has precluded the judiciary from imposing incarceration following probation.
[1] The dissent states in a note that the above passage from Benz was declared dicta in United States v. DiFrancesco, 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980), which is not entirely accurate. The Supreme Court declared as dicta only so much of the passage as suggested that an increase of a sentence which the defendant has begun to serve necessarily subjects him to double punishment in violation of the Constitution. DiFrancesco went on to hold that a sentence may constitutionally be increased pursuant to the enhancement provision of the Organized Crime Control Act of 1970, 18 U.S.C. § 3576, even after appellate review of the original sentence  which is not inconsistent with our holding. The court does not say, as the dissent implies, that once a sentence is imposed a court is divested of subject matter jurisdiction to increase it. The contrary is all too obvious.
[*] The majority cites United States v. Benz, 282 U.S. 304, 51 S.Ct. 113, 75 L.Ed. 354 (1931) for the proposition that a court may amend a sentence. At 1131. That portion of the Benz opinion was declared dicta by DiFrancesco.