Dear Mr. Breaux:
Your request for an opinion regarding the legal requirements for the enactment of ordinances by the Lafourche Parish Council has been received and forwarded to me for response. Within your request, you have specified three issues of concern that will serve as the organizational scheme for the responses that will follow.
The first issue requests an opinion on the legality of the action taken on the proposed ordinances since they were not published within fourteen days of introduction. The second issue requests an opinion on the legality of the ordinances adopted at the public hearing, notice of which was published on June 10th and the hearing held on June 11th. The third issue, the legality of the newly appointed Official Journal theTri-Parish Times, we understand to now be moot as the Tri-Parish Times
has declined appointment as the Official Journal of Lafourche Parish.
Local governments derive their authority to adopt a home rule charter from Article VI, Section 5 of the Louisiana State Constitution. La. Const. Art. 6 § 5(E) further states: "A home rule charter adopted under this section shall provide the structure and organization, powers, and functions of the government of the local governmental subdivision, which may include the exercise of any power and performance of any function necessary, requisite, or proper for the management of its affairs, not denied by general law or inconsistent with thisconstitution." (Emphasis added). La. Const. Art. 6 § 44(5) defines "general law" as "a law of statewide concern enacted by the legislature which is uniformly applicable to all persons or to all political subdivisions in the state or which is uniformly applicable to all persons or to all political subdivisions within the same class."
Therefore, a home rule charter may contain more stringent requirements than the Louisiana Constitution or general law, but may not conflict with or supercede either.
The Lafourche Parish Home Rule Charter (hereinafter "Lafourche Charter") Article IV (Ordinances and Resolutions), Section B(4) provides that "each proposed ordinance shall be published in the official journal of the parish within fourteen days after introduction." It should be noted that Section B(4)'s requirement that proposed ordinances be published within fourteen days does not clearly allocate the responsibility to publish the required proposed ordinances upon the official journal or the public official responsible for providing the information, but presumes that the public official will furnish the information and the official journal will publish it within fourteen days. The Lafourche Charter does not state a penalty for the public official or the official journal for failure to publish the proposed ordinances within Section B(4)'s fourteen day time period.
LSA R.S. 43:144, on the other hand, applies to all "[minutes], ordinances, resolutions, budgets, and proceedings for publication" and squarely places the statutory requirement upon "The official of any municipal corporation, police jury or school board by law responsible for the preparing and recording of the official proceedings" by providing for penalties of $25 to $500 and/or imprisonment of not less than ten days nor more than six months for failure to furnish the official journal with a copy of the minutes, ordinances, etc. within "[ten] days from the date of any meeting at which the official proceedings were had" Thus, care should be taken that the material required to be published must befurnished to the official journal within the R.S. 43:144 ten day time period, and not simply rely upon Section B(4)'s requirement that proposed ordinances be published within fourteen days of introduction.
There are two additional requirements in the Lafourche Charter pertaining to the publication of ordinances actually enacted. Section B(8) states: "After an ordinance has been enacted, it shall be published in the official journal of the parish." Section B(9) states: "An ordinance shall become effective on the tenth day after final publication, unless a later date is provided therein. In no event shall an ordinance become effective within ten days after final publication."
Thus, reading Sections B(4), B(8), and B(9) of the Lafourche Charter inpara materia requires: a) publication of the ordinance within fourteen days of introduction and b) publication after enactment but at least ten days prior to the ordinance taking effect. Therefore, if the publication of the proposed ordinance was not within fourteen days of introduction, or there was no final publication subsequent to enactment, the statute cannot take effect. Further, LSA 43:144 imposes monetary penalties and/or imprisonment for failing "[to] furnish the official journal with copy of the minutes, ordinances, resolutions, budgets, and proceedings for publication" within "[ten days
In Attorney General Opinion 80-1113 (copy enclosed), this office examined the consequences of failing to properly publish ordinances adopted by a home rule charter jurisdiction. In that opinion, this office concluded that ordinances adopted and not correctly published (as opposed to ordinances adopted and never published at all) could be re-introduced, ratified by the governing body, and correctly published in accordance with the pertinent home rule charter provisions. While there are now specific statutory requirements regarding publication of ordinances, it remains the opinion of this office that ordinances adopted, but not correctly published, must be properly re-introduced, ratified by the Lafourche Parish Council, and correctly published in accordance with state law and the Lafourche Charter.
Regarding the notice requirements for public meetings held to adopt an ordinance, Article IV, Section B of the Lafourche Charter contains quite specific requirements regarding the enactment of ordinances. Section B(5)(a) states "There shall be a general public hearing for every proposed ordinance. The date, time, and place of the public hearing or hearings shall be published in the official journal of the parish not less than five nor more than fourteen days prior to such hearing or hearings." (Emphasis added). Using the same reasoning as stated above, it is the opinion of this office that any ordinances adopted in contravention of any of the requirements contained in the Lafourche Charter pertaining to the adoption of ordinances should be properly re-introduced, ratified, and correctly published.
I trust this addresses the concerns presented in your opinion request. Please feel free to contact this office in the future should you require further information or assistance.
Yours very truly,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 ______________________________ THOMAS L. ENRIGHT, JR. Assistant Attorney General
RPI/TLE;dsc
Enclosure
Date Released: September 13, 2002
OPINION NUMBER 80-113
March 24, 1980.
71 Municipalities La.R.S. 33:151, et seq. La.R.S. 33:171, et seq. La.R.S. 33:172 (C)
A municipality may extend its corporate limits, through annexation, by either an election or ordinance upon the submitting of a proper petition by the residents. A municipality may also extend its municipal limits on its own where the boundary to be annexed is 90% common to the boundary of the municipality. A municipality is not required to extend its territory unless it deems it in the best interest of its citizens.
Honorable James H. Cockerham Mayor Town of Ridgecrest Ridgecrest, Louisiana 71334
Dear Mayor Cockerham:
You have asked for an opinion from this office concerning the procedure for annexing and thereby enlarging municipal limits.
Specifically, you advised that there is a plot of land adjacent to the municipality and which is surrounded on two sides and a part of a third by the town. You have asked if the town is required to incorporate this area upon the petition of a resident or residents of the subject area.
The procedure for municipal annexation is contained in La.R.S. 33:151, et. seq and La.R.S. 33:171, et. seq.
La.R.S. 33:151 provides for annexation of adjacent territory through an election:
 Whenever one-third in number and value of the bonafide owners of any lots or land, lying contiguous and adjacent to the territorial corporate limits of any city or town, the City of New Orleans excepted, or, whenever one-half in number and value of the bonafide owners of any lots or land, lying contiguous and adjacent to the corporate limits of any city located in a parish, which parish has a population of between 115,000 and 125,000 persons, desire that such lots or land be annexed to and included in the territoral corporate limits of any such adjacent or contiguous city or town. . . .
In accordance with La.R.S. 33:153, et. seq an election is held in which those persons residing in the subject area vote on whether or not the proposed area should be annexed.
A municipality's boundries may also be enlarged by a petition and ordinance as opposed to an election in accordance with La.R.S. 33:171, et. seq.
In this case:
 No ordinance enlarging the boundaries of municipalities shall be valid unless prior to the adoption thereof, a petition has been presented to the governing body of a municipality containing the written assent of a majority of the registered voters and the majority in number of the resident owners as well as twenty-five percent in value of the property owners within the area proposed to be included in the corporate limits according to the certificate of the parish assessor.
At its own option, a municipality may annex territory by ordinance, provided that at least 90 percent of the boundary of the area to be annexed is common to the boundary of the municipality. La.R.S. 33:172
(c)
In addition, a municipality may call a special election to seek approval of 25 percent of the residents of the proposed area to be annexed, which election can be called without the necessity of the aforementioned petition. La.R.S. 33:172
It is quite apparent that a municipality is not required to annex territory, either by calling an election or by ordinance, if it deems that such annexation is not in the best interest of the community. The power to extend or contract corporate limits of municipalities is a legislative power which is an incident to its power to create or abolish municipalities. A state legislature may enact a statute annexing contiguous territory or authorizing a procedure for annexation, to become opera hive upon the happening of certain contingencies. State ex rel. Kempv. the City of Baton Rouge, 215 La. 315, 47 So.2d 744 (La. 1949). This legislative power has been delegated to municipalities by virtue of La.R.S. 33:153 which states that the municipality may call an election upon the presentation of the proper petition. It does not require the municipality to call such an election. We can find no law which requires the municipality to extend its territory if the governing body does not deem it in the best interest of its citizens.
However, a municipality may extend its territory on its own option by virtue of the aforestated La.R.S. 33:172 (C) where the property to be annexed is at least 90 percent common to the boundary of the municipality. In so doing, the general law is that such annexation, regardless of whether it is done at the option of the municipality or by petition of the residents, must be reasonable. Reasonableness in enlargement of municipal boundries is determined by a number of factors such as a substantial increase in population; a need for additional area for construction of homes, mercantile, manufacturing or industrial establishments; a need for the extension of police, fire, sanitary protection or other municipal services to substantial numbers of residents of adjacent areas. Kansas City Southern Railway v. City of Shreveport,354 So.2d 1362 (La.Sup.Ct. 1978).
If you have futher questions regarding annexation then please feel free to call or write at any time.
With kindest personal regards, we remain,
Very truly yours,
 WILLIAM J. GUSTE, JR. Attorney General
 By: __________________________ David C. Kimmel Assistant Attorney General
WJG, JR/DCK/jm